IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF JOSHUA STEVENS, deceased, by and through its personal representative, ALYSAN BOOTHE COLLINS,

Plaintiff,

v. No.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN JUAN, a political subdivision of the STATE OF NEW MEXICO, and its Subsidiary, the SAN JUAN COUNTY DETENTION CENTER; THOMAS C. HAVEL, individually and in his official capacity as ADMINISTRATOR of the San Juan County Detention Center; CORRECTIONAL HEALTHCARE COMPANIES, Inc. d/b/a CHC Companies, Inc and/or d/b/a Correctional Healthcare Management, Inc., and JOHN/JANE DOES 1-10, individually and in their official capacities as Employees and/or Agents of the San Juan County Detention Center,

Defendants.

# COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS AND WRONGFUL DEATH

COMES NOW Plaintiff, by and through their attorney Guebert Bruckner P.C., (Terry R. Guebert and Christopher J. DeLara) and respectfully submit this Complaint against Defendants for Civil Rights violations, Tort Claims and Damages. This civil rights action for money damages arises under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 for civil rights violations. State common law tort claims are brought as well based on the same allegations giving rise to the federal constitutional claims raised therein.

## JURISDICTION AND VENUE

1. Jurisdiction over the federal claims is proper under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 42 U.S.C. § 1983 and state common law. Supplemental jurisdiction over the state claims is proper under 28 U.S.C. § 1367.

2. This action is also brought pursuant to the New Mexico Tort Claims Act, NMSA 1978 §§ 41-4-1, *et. seq.*

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in San Juan County, New Mexico, which is in this district.

## PARTIES

4. At all times material hereto, Joshua Stevens was a citizen of the United States, a citizen of the state of New Mexico and a resident of San Juan County, New Mexico. At all times relevant to the instant complaint, Joshua Stevens was committed to the care and custody of the San Juan County Adult Detention Center ("SJCADC").

5. Decedent Joshua Stevens was born on August 28, 1979, and died on April 30, 2012, in San Juan County, New Mexico.

6. Plaintiff Alysan Boothe Collins was appointed Personal Representative of the Wrongful Death Estate of Joshua Stevens on October 29, 2012. (*See* **Exhibit 1**)

7. Defendant Board of County Commissioners for the County of San Juan ("San Juan County") is a duly authorized governmental agency under the laws of the State of New Mexico. Defendant San Juan County is a governmental/municipal entity created pursuant to NMSA 1978 § 3-2-1 *et. seq*., and as defined in the New Mexico Tort Claims Act, NMSA 1978 § 41-4-3(B) and (C).

8. Pursuant to NMSA 1978, § 4-46-1, all suits against the county are to be brought in the name of the board of county commissioners of that county. As such, it may be sued in its name and it has the authority to employ correctional officers. Defendant San Juan County also has the authority to own, maintain, and manage SJCADC and possesses final policy and decision-making authority over SJCADC, including decisions to enter into contracts with private corporations, such as Defendant Correctional Healthcare Companies, Inc., ("hereinafter CHC") for the provision of medical/mental health care services to detainees.

9. Defendant San Juan County is also liable under NMSA 1978, § 37-1-23 for breach of contract. Defendant San Juan County entered into contracts with Defendant CHC for the benefit of SJCADC detainees, including Joshua Stevens. Under the New Mexico Tort Claims Act and NMSA 1978, § 37-1-23, Defendant San Juan County is vicariously liable for the acts and omissions of all other Defendants, including Defendant CHC and its employees and agents. At all times, Defendant San Juan County was responsible for adopting and implementing the policies, customs and practices of its employees, contractors, sub-contractors, and agents, including CHC. At all times material hereto, San Juan County was the employer of all named and unknown SJCADC correctional officer Defendants. Defendant San Juan County is a "person" for purposes of 42 U.S.C. § 1983.

10. Defendant Thomas C. Havel, upon information and belief, was at all times relevant hereto a resident of San Juan County, New Mexico, and employed as the administrator of SJCADC. At all times pertinent hereto, Defendant Havel was responsible for the screening, hiring, training, retention, supervision, discipline, counseling and control of SJCADC's correctional officers, staff, contractors and agents. At all times material hereto, Defendant Havel was a policy maker for SJCADC, the final decision maker, and the

supervisor of its operations and management on a daily basis. As the administrator in charge of SJCADC's overall operation and daily management, Defendant Havel was responsible for the implementation of, and adherence to, SJCADC's policies, procedures and customs. Defendant Havel is a public employee as defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(F). At all times material hereto, Defendant Havel was acting under the color of law and within the scope of his employment. In connection with Plaintiff's § 1983 claims, Defendant Havel is sued in his official capacity.

11. Upon information and belief, Defendants John/Jane Does 1-10 (hereinafter "Correctional Officer Defendants") were at all times material hereto, were employees, agents, SJCADC correctional officers, SJCADC staff, or CHC personnel assigned to provide medical and/or mental health services at SJCADC pursuant to the contract, including supervising and caring for Joshua Stevens at the time of his death. At all times material hereto, Correctional Officer Defendants were all acting under the color of law and within the scope of their employment. After investigation and inquiry, Plaintiffs are unaware of the identities of Defendants John/Jane Does 1-10 and therefore sue these Defendants by fictitious names. Plaintiffs will amend this complaint once the true identities of these Defendants are uncovered during formal discovery.

12. Upon information and belief, at all times material to this complaint, the Correctional Officer Defendants were residents of the State of New Mexico.

13. At all times material to this complaint, Correctional Officer Defendants are public employees as that term is defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3(F). At all times material to this complaint, the Correctional Officer Defendants were law enforcement officers as defined in the New Mexico Tort Claims Act, NMSA 1978

§ 41-4-3(D). Immunity is therefore waived for the actions described herein pursuant to NMSA 1978 § 41-4-12.

14. Defendant CHC is a private corporation with its headquarters in Greenwood Village, Colorado, which, at all times relevant, was licensed to do business in the State of New Mexico and acted under the color of state law. At the time of the incident underlying this complaint, Defendant CHC may have done business as Correctional Healthcare Management ("CHM"). Plaintiffs bring the claims alleged herein against Defendant CHC and all of these above mentioned corporate entities that are closely related to CHC, are CHC's alter egos, and/or otherwise operating under the same corporate and structural umbrella. Defendant CHC provides medical services, including mental health screening services, to correctional facilities in New Mexico, including SJCADC and Bernalillo County.

15. At all times material hereto, Defendant San Juan County had entered into written contracts with Defendant CHC to provide various medical and mental health services at SJCADC. The services provided by Defendant CHC included mental health screening on inmates before they were classified and admitted, ongoing monitoring and care, and emergency medical services for injured inmates. Defendant CHC entered into contracts with Defendant San Juan County for the benefit of SJCADC inmates, including Joshua Stevens. Defendant CHC had duties under both common law tort principles and the written contracts to provide reasonable mental healthcare, mental health screening, medical care and emergency medical care to SJCADC inmates, including Joshua Stevens. Defendant CHC had a duty to properly screen, train, hire, retain, discipline and supervise its employees who worked in SJCADC. At all time material hereto, Defendant CHC is sued for common law

negligence, third party beneficiary breach of contract, and civil rights violations pursuant to 42 U.S.C. § 1983.

16. Defendant San Juan County is sued under 42 U.S.C. § 1983 for damages under a theory of municipal liability for failure to adequately train and supervise its employees and/or agents.

17. Defendant San Juan County is sued under the New Mexico Tort Claims Act both for its failure to train and supervise and pursuant to the doctrine of *respondeat superior*.

18. With respect to Plaintiff's New Mexico Tort Claims Act claims, Defendants San Juan County received actual notice on June 29, 2012, of Plaintiff's intent to file under the New Mexico Tort Claims Act.

## FACTUAL BACKGROUND

19. Joshua Stevens, at age 9, was hit by a car and suffered a severe brain injury.

20. On April 15, 2012, Joshua Stevens was arrested and charged with third-degree felony aggravated battery against a household member, following which he was booked into San Juan County Adult Detention Center.

21. Public records indicate Mr. Stevens was arrested and incarcerated at the San Juan County Adult Detention Center at least nine times beginning in 1999. Defendant SJCADC and Defendant CHC, therefore had extensive knowledge of Mr. Stevens' mental health issues, medical conditions and history of drug use based on SJCADC records.

22. Mr. Stevens' medical history was significant for serious depression, severe anxiety and suicidal ideation. His depression would intensify while he was incarcerated.

23. Mr. Stevens had attempted suicide prior to his death on April 29, 2012, by cutting his wrists, hanging, putting a gun to his head and overdosing on pills.

24. Mr. Stevens had a suicide pact with a girlfriend.

25. Mr. Stevens' history also indicates a history of methamphetamine use. Mr. Stevens began using methamphetamine at age 18 and he considered it his "drug of choice."

26. Mr. Stevens' toxicology report after his autopsy showed he was on methamphetamines at the time of his death.

27. Issues regarding whether Mr. Stevens was competent were raised several different times in District Court proceedings prior to his April 15, 2012 arrest.

28. Pursuant to SJCADC/CHC policies and procedures, Defendants John/Jane Doe were required to evaluate Mr. Stevens in making a decision how to classify and house him, including conducting a mental health evaluation to determine Mr. Stevens' risk factors for suicide. Plaintiff Stevens' incarceration history, including his psychological profile, was readily available to Defendants through previous booking records and other documentation. The records showed that Plaintiff Stevens had been repeatedly arrested in the past 11 years, including three (3) arrests in a three (3) month period beginning in January 2012. The records also showed that Mr. Stevens was bipolar, had a history of violence, substance abuse, depression, suicide ideation and at least one previous suicide attempt. Additionally, the records indicated that Mr. Stevens had a traumatic brain injury and had difficulty understanding and communicating effectively. Correctional Officer Defendants knew or should have known this.

29. April 15, 2012, at approximately 6:30 p.m., Defendant Jane Doe completed a form titled "Receiving Screening" for Mr. Stevens upon intake to SJCADC. On that form,

Mr. Stevens reported he had previously attempted suicide. Additionally, the form states that Mr. Stevens has been diagnosed with Bipolar Disorder and Depression.

30. Defendant Jane Doe commented on said form under the section titled Other Problems Identified or Additional Comments: "Pt. put on observation for mental health. Pt. has been having crying spells and mood has been up and down."

31. Mr. Stevens, at the time of intake at SJCADC for the April 15, 2012 arrest, reported that in the prior two months, he had not taken any medication for his Bipolar Disorder and/or depression.

32. At some time thereafter, Mr. Stevens was removed from the medical unit and housed in General Population.

33. Mr. Stevens, beginning with his arrival at the detention center on April 15, 2012, had complained of not being able to sleep, being depressed, needing his medication and having trouble with his girlfriend.

34. Mr. Stevens, on April 27, 2012 (two days before he hanged himself) had planned to marry his girlfriend.

35. He reported to medical personnel the day before he hanged himself that he was having problems with his "wife" and feeling anxious.

36. On April 29, 2012, San Juan County Deputy J. Roberts responded to San Juan County Adult Detention Center in reference to a reported attempted suicide.

37. An inmate discovered Mr. Stevens in one of the bathroom stalls. Mr. Stevens had hung himself from a vent above the stall. Mr. Stevens had removed a curtain from the toilet area and placed it around the shower stall. Mr. Stevens threaded a part of a sheet from his cot into the vent on the wall.

38. Mr. Stevens was in the shower stall for up to 20 minutes before he was found.

39. Mr. Stevens was found hanging by another inmate who entered the stall area and went to retrieve the curtain for the toilet area.

40. Upon this discovery, the inmate yelled out to other inmates in the bunk house. Several inmates began to get Mr. Stevens down while an inmate called for a "response" from the guards.

41. One inmate held up Mr. Stevens' body while another inmate cut the sheet with a pair of nail clippers.

42. Jail guards did not respond to the scene until he had been cut down with nail clippers, at least 35 minutes after Mr. Stevens hanged himself.

43. The guards arrived after Mr. Stevens was cut down and they began cardiopulmonary resuscitation.

44. Paramedics were able to regain a pulse and Mr. Stevens was brought to San Juan Regional Medical Center, where he was pronounced brain dead and kept on life support for donor services.

45. In an Autopsy Report dated May 3, 2012, the Office of the Medical Investigator concluded that Mr. Stevens died of hanging.

46. Mr. Stevens did in fact die of hanging.

47. Mr. Stevens left two suicide notes in his bunk.

48. According to the New Mexico Department of Health, mental disorders increase the risk for both attempted suicide and suicide; approximately 90 percent of suicide victims have a diagnosable mental health condition, most commonly a mood or substance use disorder.

49. Some of the most relevant warning signs for suicide include: substance abuse, anxiety/agitation, anger, depression, withdrawal and mood change. It is well recognized that suicidal individuals may deny suicidal ideation or want to discuss their suicidal thoughts with care givers.

50. San Juan County has an abnormally high suicide rate – above the rate for the State of New Mexico and nearly double the national average.

51. Suicide is the second leading cause of death in jails and the jail suicide rate is nine (9) times that of the general population.

52. SJCADC has a history of inmates dying or committing suicide while incarcerated, including a 2011 suicide in which an inmate hanged himself in the medical unit.

53. Given San Juan County's high suicide rate coupled with the high rate of suicides in jails, correctional Officer Defendants should have known or knew and should have been trained to recognize the significant suicidal risk factors displayed by Mr. Stevens.

54. Correctional Officer Defendants failed to give appropriate care for Mr. Stevens.

55. Defendants Havel, CHC and San Juan County failed to adequately train its staff as well as failed to implement policies and procedures, and were deliberately indifferent to the needs and rights of Mr. Stevens, which resulted in his death.

**COUNT I: 42 U.S.C. § 1983 CLAIM AGAINST SAN JUAN COUNTY ADULT DETENTION CENTER OFFICER DEFENDANTS**

56. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

57. At the time of his death, Mr. Stevens was a pretrial detainee awaiting trial on criminal charges.

58. A pretrial detainee is entitled to Fourteenth Amendment substantive due process rights that are equivalent to the Eighth Amendment rights of a prisoner to be free from cruel and unusual punishment. *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). The Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates. *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998).

59. 42 U.S.C. § 1983 claims based on jail suicides are considered and treated as claims based on failure of jail officials to provide medical care for those in custody. *Barrie v. Grand County, Utah*, 119 F.3d 862, 978 C.A.R. 1227 (10th Cir. 1997).

60. The Correctional Officer Defendants' actions, to wit: their failure to recognize Mr. Stevens' serious mental health condition of depression, signs of suicide and their failure to provide Mr. Stevens with appropriate supervision and medical care, with the knowledge that such actions could reasonably be expected to lead to the death or serious injury to Mr. Stevens, were deliberately indifferent to the needs and rights of Mr. Stevens.

61. By the aforesaid conduct, the Correctional Officer Defendants violated Mr. Stevens' right to humane conditions of confinement as guaranteed to him, a pretrial detainee, by the Fourteenth Amendment to the United States Constitution.

62. As a direct and proximate result of the actions of Correction Officer Defendants enumerated above, Joshua Stevens sustained serious personal injury that resulted in his tragic and untimely death.

63. As a direct and proximate result of the actions and omissions by the Correctional Officer Defendants enumerated above, and pursuant to the New Mexico Wrongful Death Act, NMSA 1978 §§ 42-2-1, et. Seq., Plaintiff is entitled to an award of monetary damages

for the reasonable expense of funeral and burial; the pain and suffering experienced by the deceased between the time of injury and death; loss of household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy, the value of the deceased's life apart from his earning capacity; the mitigating or aggravating circumstances attending the wrongful act, neglect or default; and hedonic damages, or damages for the loss of value of Joshua Stevens' life itself, all to Plaintiff's damage in an amount to be determined by the Court at trial.

64. Furthermore, the Correctional Officer Defendants' actions were willful, malicious, sadistic, wanton, and perpetrated with reckless disregard for the rights and safety of Joshua Stevens. Those actions shock the contemporary conscience, giving rise to an award of punitive damages.

**COUNT II: 42 U.S.C. § 1983 CLAIM AGAINST SAN JUAN COUNTY, ADMINISTRATOR THOMAS HAVEL AND CHC: MUNICIPAL AND SUPERVISORY LIABILITY (FAILURE TO TRAIN AND SUPERVISE)**

65. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

66. Defendants San Juan County and Havel's immunity is waived under the New Mexico Tort Claims Act, pursuant to NMSA 1978, §§ 41-4-6, 41-4-9, 41-4-10 and 41-4-12.

67. Defendants San Juan County, Havel and CHC failed to train and/or failed to supervise Correctional Officer Defendants regarding a pretrial detainee's right to humane conditions of confinement as guaranteed by the Fourteenth Amendment to the United States Constitution. Said humane conditions include but are not limited to providing access to adequate and timely medical care and supervision for pretrial detainees suffering from serious mental health conditions.

68. Defendants San Juan County, Havel and CHC's failure to train and/or supervise its corrections officers can be inferred from the obviousness of the facts.

69. Defendants San Juan County, Havel and CHC failed to implement and/or adhere to policies and procedures in regards to how SJCADC correctional officers and/or CHC employees deal with persons held at SJCADC who are known to be potential suicide risks and/or who have a demonstrated history of depression and previous suicide attempts.

70. Defendants San Juan County, Havel and CHC's actions, to wit: the county's failure to train and/or supervise its corrections officers with regard to a pretrial detainee's right to humane conditions of confinement as guaranteed by the Fourteenth Amendment to the United States Constitution, with the knowledge that such actions could reasonably be expected to lead to death of Joshua Stevens, or any other pretrial detainee, were deliberately indifferent to the needs and rights of Joshua Stevens and all other San Juan County pretrial detainees.

71. Defendants San Juan County, Havel and CHC's failure to sufficiently train and/or supervise can further be inferred from San Juan County Adult Detention Center records that, upon information and belief, demonstrate a pattern and practice of deliberate indifference to any duties they may have had to provide, supervise and train employees to meet the medical needs of persons confined in jail.

72. Defendants San Juan County, Havel and CHC's failure to train and supervise Correctional Officer Defendants was a moving force behind Correctional Officer Defendants' acts and omissions in violation of Joshua Stevens' right to humane conditions of confinement.

73. As a direct and proximate result of the actions of Defendants San Juan County, Havel and CHC enumerated above, Joshua Stevens died a tragic and untimely death.

74. As a direct and proximate result of the actions of Defendants San Juan County, Havel and CHC enumerated above, and pursuant to the New Mexico Wrongful Death Act, NMSA 1978, §§ 41-2-1, *et. seq.*, Plaintiffs are entitled to an award of monetary damages for the reasonable expense of funeral and burial; the pain and suffering experienced by the deceased between the time of injury and death; loss of household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy, the value of the deceased's life apart from his earning capacity; the mitigating or aggravating circumstances attending the wrongful act, neglect or default; and hedonic damages, or damages for the loss of value of Joshua Stevens' life itself, all to Plaintiff's damage in an amount to be determined by the Court at trial.

**COUNT III: NEGLIGENCE BY SAN JUAN COUNTY, THOMAS HAVEL AND CHC UNDER THE NEW MEXICO TORT CLAIMS ACT**

75. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

76. The aforementioned conduct of Correctional Officer Defendants resulted in personal injury, bodily injury and wrongful death to Plaintiff resulting from the deprivation of Joshua Stevens' rights, privileges or immunities secured by the Constitution and laws of the United States and New Mexico to humane conditions of confinement.

77. Defendant San Juan County is a governmental entity that has immediate supervisory responsibility over the actions of its employees, including Correctional Officer Defendants.

78. Defendants San Juan County, Havel and CHC had a duty to exercise ordinary care to properly screen, hire, train, monitor, supervise and/or discipline all of its employees.

79. Correctional Officer Defendants had a duty to exercise ordinary care in carrying out their duties as law enforcement officers, corrections officers and medical staff.

80. Defendants San Juan County, Havel and CHC breached the foregoing duty by failing to properly screen, hire, train, monitor, supervise and/or discipline its employees, by failing to adopt and ensure compliance with appropriate policies, procedures and protocols, by failing to implement appropriate supplemental training, and by failing to take other appropriate and usual supervisory actions to correct the problems and prevent the harm to Mr. Stevens that occurred.

81. Correctional Officer Defendants breached the foregoing duties by failing to detect the suicide risk presented by Mr. Stevens, by failing to report the suicide risk presented by Mr. Stevens, negligently failing to conduct suicide screening and/or work as medical responders; negligently failing to comply with appropriate policies, and by failing to properly monitor Joshua Stevens after he was placed in general population, and by failing to prevent the suicide of Joshua Stevens.

82. As a direct and proximate result of Defendants San Juan County, Havel and CHC's negligent acts, enumerated above, Joshua Stevens sustained serious personal injuries, which resulted in his tragic and untimely death.

83. As a direct and proximate result of Defendants San Juan County, Havel and CHC's negligent acts, enumerated above, and pursuant to the New Mexico Wrongful Death Act, NMSA 1978, §§ 41-2-1, *et. seq.*, Plaintiffs are entitled to an award of monetary damages for the reasonable expense of funeral and burial; the pain and suffering experienced by the

deceased between the time of injury and death; the lost earnings, the lost earning capacity and the value of the lost household services of the deceased considering the deceased's age, earning capacity, health, habits, and life expectancy, the value of the deceased's life apart from his earning capacity; the mitigating or aggravating circumstances attending the wrongful act, neglect or default; and hedonic damages, or damages for the loss of value of Joshua Stevens' life itself, all to Plaintiff's damage in an amount to be determined by the Court at trial.

## COUNT IV: CLAIM AGAINST CORRECTIONAL OFFICER DEFENDANTS FOR DEPRIVATION OF RIGHTS, PRIVILEGES AND IMMUNITIES UNDER THE NEW MEXICO TORT CLAIMS ACT

84. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

85. Correctional Officer Defendants' deprivation of Joshua Stevens' constitutional right to humane conditions of confinement, as described above, was a direct and proximate cause of Plaintiff's damages.

86. Pursuant to NMSA 1978 § 41-4-12, the immunity granted by NMSA 1978 § 41-4-4(A) does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from the deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States or New Mexico when caused by law enforcement officers acting within the scope of their employment.

87. Pursuant to the New Mexico Tort Claims Act, San Juan County, Havel and CHC are liable under the doctrine of respondeat superior for any violation of the Tort Claims Act perpetrated by a county employee.

88. At the time that Correctional Officer Defendants committed the aforementioned violations of the Tort Claims Act, they were acting as law enforcement officers within their scope of employment under San Juan County.

89. San Juan County, Havel and CHC are therefore liable to Plaintiff for the Correctional Officer Defendants' violations of the Tort Claims Act.

**COUNT V: THIRD PARTY BENEFICIARY BREACH OF CONTRACT CLAIM AGAINST DEFENDANTS SAN JUAN COUNTY, HAVEL AND CHC**

90. Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

91. Defendant San Juan County's immunity is waived for this claim pursuant to NMSA 1978, § 37-1-23.

92. At all times material, Defendants San Juan County and Havel contracted with Defendant CHC through written documents to have CHC provide medical care, mental health care and detainee screening, which included screening for potential suicidal detainees at SJCADC.

93. Defendants San Juan County and Havel have constitutional, statutory and regulatory duties to provide adequate medical care, mental health care and suicide risk screenings and supervision to detainees booked into and/or held at SJCADC.

94. Joshua Stevens and other detainees, including but not limited to potential suicidal detainees, were the intended and known third-party beneficiaries of the written contracts between Defendants San Juan County, Havel and CHC.

95. Defendant CHC breached its contractual duties, including but not limited to: failing to adequately screen, hire, train and supervise CHC employees assigned to work at SJCADC; failing to adequately provide quality mental health services to detainees; by

maintaining/permitting an environment that would allow detainees to be harmed, including an environment in which detainees could commit suicide and by failing to provide quality suicide prevention screening and ongoing suicide evaluation policies and procedures.

96. Defendants San Juan County and Havel breached its contractual duties, including but not limited to: failing to issue and enforce appropriate policies, procedures, and/or regulations to ensure the safety of Joshua Stevens and other SJCADC detainees in compliance with the contracts entered by Defendants San Juan County, Havel and CHC; failing to ensure CHC staffed SJCADC with adequately trained, educated and qualified medical and mental health providers and by failing to enforce the provisions of the written contracts that mandate that CHC provide adequate medical and mental health services, including suicide screening and prevention.

97. As a direct and proximate result of Defendants San Juan County, Havel and CHC's breaches of contract, Joshua Stevens, the third-party beneficiary of the written contracts, died.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Award compensatory damages jointly and severally against all Defendants in an amount to be determined by the jury at trial;

B. Award punitive and exemplary damages against Correctional Officer Defendants, in a separate amount to be determined by the jury at trial for their violations of Plaintiff's federally protected rights;

C. Award pre- and post-judgment interest on all monetary damages in an amount to be fixed by the Court;

D. Award Plaintiffs their costs in bringing this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

E. Plaintiffs demand a jury trial; and

F. Award other and further relief as the Court deems proper under the circumstances.

GUEBERT BRUCKNER P.C.

By *_/s/ Terry R. Guebert_*

Terry R. Guebert
Christopher J. DeLara
P.O. Box 93880
Albuquerque, NM 87199-3880
(505) 823-2300
tguebert@guebertlaw.com
ljunker@guebertlaw.com
*Attorneys for Plaintiff*

F:\Clients\7100.066cf\Pleadings\Complaint final.docx/aba