IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTATE OF JOSHUA STEVENS, deceased,
by and through its personal representative, ALYSAN
BOOTHE COLLINS,

        Plaintiff,

v.                                                                CV 13-00882 WJ/KK

BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF SAN JUAN, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CORRECTIONAL HEALTHCARE COMPANIES' PARTIAL MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendant Correctional Healthcare Companies' Partial Motion to Dismiss Counts I and II of the Complaint (**Doc. 40**), filed on August 19, 2014. Having reviewed the parties' briefs and applicable law, the Court finds that the motion should be converted to a motion for judgment on the pleadings but is otherwise well taken and, therefore, is **GRANTED**.

### BACKGROUND

The following well-pleaded factual allegations are accepted as true for purposes of the instant motion. Decedent Joshua Stevens was arrested and incarcerated at the San Juan County Adult Detention Center ("SJCADC") on an aggravated battery charge on April 15, 2012, his ninth such arrest since 1999. Stevens had a history of depression, anxiety, suicidal ideation, and methamphetamine use, and Plaintiff contends that SJCADC and Correctional Healthcare

Companies ("CHC"), the organization providing medical services at the facility, "had extensive knowledge of Mr. Stevens' mental health issues, medical conditions and history of drug use."

Upon his arrival at SJCADC, an employee of either SJCADC or CHC completed a mental-health screening of Stevens pursuant to SJCADC and/or CHC policies and procedures. The as-yet-unnamed Jane Doe employee noted previous suicide attempts by Stevens, previous diagnoses for bipolar disorder and depression, failure to take any medication for these disorders in the past two months, and recent crying spells and mood swings. The employee recorded that Stevens had been placed under "observation for mental health." However, at an unspecified time thereafter, Stevens was removed from observation and housed in a general population area. It is unclear who ordered the reassignment.

On April 28, 2012, Stevens reported to "medical personnel" that he was feeling anxious and having problems with his girlfriend, whom he had originally planned to marry the preceding day. The complaint does not state whether or how these "medical personnel" responded or should have responded to these reports. On April 29, 2012, Stevens hanged himself in a bathroom stall, using a bed sheet threaded through a shower vent.

Stevens's estate filed this action in September 2013 naming multiple Defendants including CHC and several unnamed John Doe / Jane Doe individuals, dubbed "Correctional Officer Defendants," who were "employees, agents, SJCADC correctional officers, SJCADC staff, or CHC personnel assigned to provide medical and/or mental health services at SJCADC." Two of Plaintiff's five claims are relevant to the instant motion. Count I alleges that "[t]he Correctional Officer Defendants[]" were deliberately indifferent to Stevens's needs by failing to recognize his depression and suicidal tendencies and by failing to provide him with appropriate supervision and medical care, all in violation of the Fourteenth Amendment. Count II states that

San Juan County, the SJCADC administrator, and CHC all "failed to train and/or failed to supervise Correctional Officer Defendants regarding a pretrial detainee's right to humane conditions of confinement as guaranteed by the Fourteenth Amendment." Plaintiff brings both claims pursuant to 42 U.S.C. § 1983, which provides a remedy when a person acting under color of state law causes the deprivation of rights or privileges secured by the laws and Constitution of the United States. CHC answered Plaintiff's complaint in October 2013 and filed the instant motion to dismiss in August 2014.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## DISCUSSION

Although CHC appears to broadly assert that it seeks dismissal of Counts I and II altogether, its briefing only addresses these claims to the extent that they target CHC or its own

unnamed employees in their official and individual capacities. As such, the Court will only consider CHC's motion to dismiss with respect to claims against those parties.

## I. Conversion of Motion to Dismiss to Motion for Judgment on the Pleadings

As an initial matter, the Court notes that CHC's partial motion to dismiss is procedurally improper. A motion asserting a defense under Rule 12(b) "must be made before pleading if a responsive pleading is allowed," which is to say that a defendant should file the motion before filing an answer. *See* FED. R. CIV. P. 12(b). CHC filed the instant motion ten months after answering Plaintiff's complaint. However, parties are permitted to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial," *see* FED. R. CIV. P. 12(c), and a defense of failure to state a claim may be raised through such a motion, *see* FED. R. CIV. P. 12(h)(2)(B). Such motions are functionally equivalent to motions to dismiss and are reviewed under the same standards. *See Nelson v. State Farm Mut. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). For this reason, courts will routinely convert an untimely motion to dismiss for failure to state a claim into a motion for judgment on the pleadings. *See, e.g.*, *St. Paul Ramsey Cnty. Med. Ctr. v. Pennington Cnty., S.D.*, 857 F.2d 1185, 1187-88 (8th Cir. 1988) (citing *Falls Riverway Realty v. Niagara Falls*, 754 F.2d 49, 53 (2d Cir. 1985)); *M & M Fuel Co., Inc. v. United States*, No. 90-1136-K, 1991 WL 12875, at *1 (D. Kan. Jan. 29, 1991) (unpublished) (citation omitted). The Court finds that conversion of CHC's motion is appropriate and will therefore consider the motion as one for judgment on the pleadings under Rule 12(c), applying the same standards used for Rule 12(b)(6) motions.

## II. Deliberate Indifference

CHC challenges Plaintiff's first claim on two grounds. First, CHC asserts that to the extent that Count I alleges a claim of deliberate indifference against CHC employees, Plaintiff

has failed to provide adequate notice in its complaint as to which of the unnamed Defendants committed what purportedly wrongful acts. Second, assuming that Plaintiff has provided appropriate notice to the parties, CHC contends that Plaintiff has not alleged sufficient facts that, taken as true, would state a claim against CHC employees.

CHC's argument largely relies on the Tenth Circuit case *Robbins v. Oklahoma*. *See* 519 F.3d 1242 (10th Cir. 2008). In that case, an infant died from fatal injuries inflicted while she was in the care of a state-subsidized daycare center, and the parents filed suit pursuant to § 1983 against seven named individuals, ten unnamed employees of the Oklahoma Department of Human Services, and the Department itself. *See id.* at 1245-46. The plaintiffs' complaint broadly set forth allegations against "Defendants" as a whole, without specifying who, if any, of the individuals were liable for any particular actions. *See id.* at 1250. "Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts [we]re attributable to whom," the Tenth Circuit found that "it [wa]s impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *See id.* This was problematic because "it is particularly important in [§ 1983 cases] that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Id.* The court therefore held that the complaint failed to satisfy Rule 8's requirement that the plaintiffs "provide fair notice of the grounds for the claims made against each of the defendants." *See id.*

Here, CHC contends that the same principals require the dismissal of Count I against the John Doe and Jane Doe Defendants employed by CHC. The company argues that by alleging Count I against "Correctional Officer Defendants," Plaintiff fails to differentiate between the

different unnamed CHC employees or, indeed, the CHC employees and individuals working directly for SJCADC. The Court agrees. The only factual allegation mentioning any individuals that might conceivably be CHC employees state that a Jane Doe Defendant completed Stevens's intake screening and that Stevens told "medical personnel" that he was feeling anxious. Neither of these statements allege any wrongful action or inaction by any of the unnamed individuals. Plaintiff then alleges that "Correctional Officer Defendants failed to give appropriate care for Mr. Stevens," to recognize Stevens's mental health conditions, and to provide appropriate supervision and medical care. These statements do not "make clear exactly *who* is alleged to have done *what*" to Stevens and therefore fail to give notice to each Defendant as to the nature of the claims against him or her. *See Robbins*, 519 F.3d at 1250.

Plaintiff objects that *Robbins* is inapposite, effectively asserting that its principles should be limited to cases involving defendants with different jobs and "entirely different" responsibilities. While it is true that "[t]he need for individualized allegations is especially important where . . . 'each of the defendants had different powers and duties,'" *see Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quotation omitted), the language in *Robbins* is not limited to such situations, and subsequent Tenth Circuit decisions have not interpreted the case so strictly. Dicta in *Gray v. University of Colorado Hospital Authority* stressed that the defendants lacked notice simply because the plaintiffs' claim and the facts supporting it used the collective term "Defendants" and "d[id] not specify what acts [we]re attributable to whom." *See* 672 F.3d 909, 921 n.9 (10th Cir. 2012) (quotation omitted). Similarly, in the unpublished case *VanZandt v. Oklahoma Department of Human Services*, the court held that even though the plaintiffs were referring to three named defendants working for the same employer, her use of the collective term "Defendants" was still improper because "the burden rests on the plaintiffs to

provide fair notice of the grounds for the claims made against each of the defendants." *See* 276 F. App'x 843, 848-49 (10th Cir. 2008) (unpublished) (quoting *Robbins*, 519 F.3d at 1250). Plaintiff's protestations to the contrary, *Robbins* and its progeny clearly counsel against the lack of specificity found in this claim.

Plaintiff's claim is further undermined in that she has failed to adequately allege deliberate indifference for Rule 8 purposes. Plaintiff properly couches Count I in terms of the standard that applies to inmate claims of cruel and unusual punishment under the Eighth and Fourteenth Amendments. *See Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 866-67 (10th Cir. 1997) (citation omitted) ("[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody."); *see also Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1998) ("Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment."). Under this standard, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard features objective and subjective components. "Under the objective inquiry, the alleged deprivation [of care] must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To establish the subjective component, the plaintiff must show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; [at the time of the deprivation,] the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837.

Here, Plaintiff has altogether failed to allege that any John Doe or Jane Doe Defendants employed by CHC deprived Stevens of necessary care. She does allege that "[C]orrectional Officer Defendants should have known or knew . . . .the significant suicidal risk factors displayed by Mr. Stevens" and that "Correctional Officer Defendants failed to give appropriate care for Mr. Stevens." However, "[a] pleading that offers . . . 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff does not allege any specific wrongful acts or omissions by Correctional Officer Defendants, either individually or collectively. Indeed, Plaintiff does not allege that these Defendants withheld any particular medical care whatsoever from Stevens. Nor does the complaint sufficiently allege that Correctional Officer Defendants drew an inference that a risk of serious harm existed or possessed facts from which such an inference could be drawn.

Plaintiff disputes this conclusion, citing her allegations that Stevens had previously received mental health treatment at SJCADC and that a specific Jane Doe Defendant, presumably a CHC employee, recorded on the intake screening form that Stevens had been placed on observation due to his crying spells and mood swings. Arguably the allegations as to that Jane Doe, taken as true, would allow a fact finder to determine that she could have and did draw an inference that a serious risk of harm existed. Yet Plaintiff does not allege any wrongful action or inaction on her part, and Plaintiff does not explain how that Jane Doe's inferences (if any) can be imputed to the other CHC-employed Defendants. The existence of SJCADC mental health records on Stevens might make it conceivable that some CHC employees could have possessed facts allowing for an inference that a risk of serious harm existed. Yet without

8

knowing more about the unnamed CHC employees whom Plaintiff targets, their access to such records, and their purported acts or omissions, the possibility that they could have and did draw such an inference has not been "nudged . . . across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

Finally, to the extent that Plaintiff's claim against Correctional Officer Defendants employed by CHC is brought against them in their official capacity, Plaintiff has failed to allege that CHC was the "moving force" behind the violations alleged in Count I. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quotation omitted). Specifically, Plaintiff does not claim that these alleged violations were the result of a CHC policy or custom. *See id.*; *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying the same standard to private entities acting under color of state law). Plaintiff essentially concedes this but asserts that "it is reasonable to infer from the facts that there were policies in place regarding the treatment, placement, evaluation and discharge [of prisoners] from the medical unit." However, to survive a motion to dismiss, Plaintiff's official-capacity claim itself must allege sufficient facts to show not only that a policy was in place, but that "a specific policy or custom was the moving force behind the alleged violation," *Dalcour v. City of Lakewood*, 492 F. App'x 924, 930 (10th Cir. 2012) (unpublished) (citing *Graham*, 473 U.S. at 166), or that "its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights," *Berry v. City of Muskogee*, 900 F.2d 1489, 1496 (10th Cir. 1990). The absence of such allegations here requires the dismissal of the claim to the extent that it is brought against CHC-employed Correctional Officer Defendants in their official capacity.

Plaintiff closes by emphasizing that the discovery process may reveal relevant evidence to support this claim. While the Court appreciates Plaintiff's desire to better develop her claims

through discovery, Rule 8 requires that a complaint state such claims with sufficient particularity and in a manner calculated to provide fair notice to the parties. Because Plaintiff has failed to follow these standards with respect to her allegations in Count I, that claim must be dismissed as to the CHC-employed Correctional Officer Defendants.

### III. Failure to Train and Supervise

Count II alleges that CHC, among others, failed to appropriately train and supervise its employees regarding a pretrial detainee's Fourteenth Amendment right to humane conditions of confinement. As with Count I, CHC contends that Plaintiff has not alleged that any policy or custom was the driving force behind the purported violations described in Count II. *See Dalcour*, 492 F. App'x at 930 (citing *Graham*, 473 U.S. at 166). Plaintiff retorts that her allegations give rise to an inference that CHC "failed to implement policies and train its employees" with respect to inmates at risk for suicide.

To state a claim against CHC for either failure to supervise or failure to train, Plaintiff must show not only that CHC employees acted with deliberate indifference, but that there was also a direct causal link between this underlying constitutional violation and an official custom or policy. *See Mee v. Ortega*, 967 F.2d 423, 431 (10th Cir. 1992) (quotation omitted) (failure to supervise); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (failure to train). Yet as previously stated, Plaintiff's allegations do not sufficiently allege any acts or omissions by CHC or its unnamed employees to state a claim for deliberate indifference, let alone any facts giving rise to an inference that such acts or omissions were the result of CHC training or supervision policies or a failure to implement such policies. Plaintiff's contention in her complaint that "CHC's failure to train and/or supervise . . . can be inferred from the obviousness of the facts" is a

conclusory statement that does nothing to state a claim if the complaint is short on facts to support it. Without more, Count II must be dismissed as to CHC.

## CONCLUSION

Plaintiff has failed to provide sufficient notice of Count I as to CHC-employed Correctional Officer Defendants and has failed to state a claim for deliberate indifference against those employees. Further, Plaintiff has failed to support Count II against CHC by alleging any underlying constitutional violations or any causal link between such violations and a CHC custom or policy. Accordingly, CHC's Partial Motion to Dismiss Counts I and II of the Complaint **(Doc. 40)** is hereby converted to a partial motion for judgment on the pleadings and is **GRANTED**; Count I is dismissed with prejudice as to Correctional Officer Defendants employed by CHC, and Count II is dismissed with prejudice as to CHC.

SO ORDERED

_____
UNITED STATES DISTRICT JUDGE