**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

ESTATE OF JOSHUA STEVENS, deceased,
by and through its personal representative, ALYSAN
BOOTHE COLLINS,

                     Plaintiff,

v.                                         No. CV 14-00882 WJ/KK

BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF SAN JUAN, et al.,

                     Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon the motion for summary judgment **(Doc.
43)** filed by Defendants Board of County Commissioners of the County of San Juan (hereinafter
"the Board") and Thomas C. Havel on August 28, 2014. Having reviewed the parties' briefs and
applicable law, the Court finds that the motion is well taken in part and, therefore, is **GRANTED
IN PART AND DENIED IN PART** as herein described.

**BACKGROUND**

Unless otherwise indicated, the facts described herein are not in dispute. Decedent Joshua
Stevens was arrested and incarcerated without bond at the San Juan County Adult Detention
Center ("SJCADC") on April 15, 2012. This was not Stevens' first visit to SJCADC; medical
records from the facility document his mental health treatment there throughout late 2003, early
2004, and early 2005. Among those documents are records indicating that Stevens tried to

commit suicide several times by cutting his wrists, by cutting his arm and chest, by attempting to choke on a bottle cap, and by hanging.

During the booking process in April 2012, the arresting officer completed an Arresting Officer Questionnaire in which he stated that neither Stevens nor any other knowledgeable individual had given any indications that Stevens was suicidal. The SJCADC booking officer also completed a Suicide Prevention Screening form in which he indicated that Stevens showed signs of depression, that Stevens had a history of suicide attempts, and that he did not believe Stevens was presently a suicide risk.

Also during the booking process, an employee of Correctional Healthcare Companies ("CHC"), the contractor providing medical services at SJCADC, recorded that Stevens had a history of mental health treatment and suicide attempts but that Stevens was not currently suicidal. The CHC employee then stated, "[Stevens] put on observation for mental health. [Stevens] has been having crying spells and mood has been up and down." A concurrent entry in Stevens' "Problem Oriented Record" says that Stevens said he was being treated for bipolar disorder and depression, that Stevens could not remember what medications he took but that he believed he needed them, and that Stevens currently had no suicidal tendencies. This entry suggests that the decision to place Stevens "on observation" in the SJCADC medical unit was made by a Sergeant Alford.

On April 17, 2012, while still under observation in the medical unit, Stevens appeared to be very anxious and insisted that he needed medication. CHC staff prescribed citalopram and trazodone, which are used to treat depression,[1] and hydroxyzine, which is indicated for anxiety

---

[1] *See* PHYSICIANS' DESK REFERENCE (PDR) 1269, 3299 (59th ed. 2005); Nat'l Insts. of Health, *Trazodone*, MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html (last accessed October 28, 2014).

and other symptoms.² Although CHC policy appears to call for initials on a patient's Medication Sheet & Administration Record every time medication is administered or refused, Stevens' sheet only shows staff initials for appropriate administrations of trazodone and hydroxyzine but none for citalopram. On the other hand, progress notes state that the citalopram prescription was successfully started on April 18 and that Stevens was told to "continue taking medication as prescribed." Stevens also signed a form indicating refusal to continue with citalopram on April 27; CHC policy allows a patient to sign that form only after his third refusal to take medication, and the form itself gives the reason for refusal as "Don't get up in the morning," suggesting that Stevens may have taken the medication on several occasions.

Meanwhile, on April 18, Stevens told a social worker that he was not suicidal, that he was not a risk to himself or others, that he was looking forward to the future, and that he would request mental health services if he needed them. The parties agree that Stevens was transferred out of medical observation and into the general prison population that day. Despite noting sleeping problems on April 22, the following day Stevens was in a good mood with hope for the future and without any suicidal ideation. A CHC nurse recorded on April 28 that Stevens was fidgety and anxious and talking about problems with his wife, but he appeared calmer by the end of his visit. The nurse reviewed the procedures for obtaining medical or mental health services with Stevens before he left.

On the morning April 29, 2012, Stevens entered a shower stall, tied a sheet through a vent, and hanged himself. He was found some time later by another inmate, and SJCADC guards arrived within one minute of being informed of the matter. Stevens died in a nearby hospital a few days later.

---

² *See* Nat'l Insts. of Health, *Hydroxyzine*, MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682866.html (last accessed October 28, 2014).

A subsequent investigation revealed a number of phone calls made by Stevens to persons outside of SJCADC, but the parties agree that none of the recipients or any other person notified SJCADC that Stevens was experiencing suicidal ideation. The parties disagree as to whether other inmates knew that Stevens might be suicidal, but both sides concede that these inmates did not tell any SJCADC officers about any concerns prior to Stevens' death.

The representative of Stevens' estate filed this action in September 2013, naming the Board, SJCADC Administrator Havel, and CHC as Defendants. Plaintiff also listed as Defendants multiple unnamed John Doe / Jan Doe individuals, dubbed "Correctional Officer Defendants," who were "employees, agents, SJCADC correctional officers, SJCADC staff, or CHC personnel assigned to provide medical and/or mental health services at SJCADC." Count I, brought pursuant to 42 U.S.C. § 1983, alleges that "[t]he Correctional Officer Defendants[]" were deliberately indifferent to Stevens' needs by failing to recognize his depression and suicidal tendencies and by failing to provide him with appropriate supervision and medical care, all in violation of the Fourteenth Amendment. Count II, also brought under § 1983, states that San Juan County, Havel, and CHC all "failed to train and/or failed to supervise Correctional Officer Defendants regarding a pretrial detainee's right to humane conditions of confinement as guaranteed by the Fourteenth Amendment." Three other claims allege violations of state law.

The Board and Havel filed the instant summary judgment motion on August 28, 2014, asserting that no genuine issues of fact exist as to the claims against them and the SJCADC employees and that they are entitled to judgment as a matter of law on those claims. The Court granted a motion for judgment on the pleadings as to CHC and its unnamed employees with respect to Counts I and II on October 16, 2014. *See* (**Doc. 55**).

**LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In ruling on a motion for summary judgment, the Court may neither make credibility determinations nor weigh the evidence but must view the record and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2011) (quotation omitted).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See, e.g.*, *Celotex*, 477 U.S. at 323; *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *See, e.g.*, *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The existence of some alleged, immaterial factual dispute between the parties or a mere "scintilla of evidence" supporting the nonmoving party's position will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252, 256.

**DISCUSSION**

Before analyzing the Board and Havel's arguments and Plaintiff's counterarguments, it is important to make clear what the Court is considering with these motions. The Board and Havel only challenge Plaintiff's claims insofar as they are brought against these particular Defendants

and their employees; they do not challenge Plaintiffs' claims against CHC and its employees. As such, for purposes of resolving the instant motion, the Court will only consider the allegations against CHC and its unnamed employees to the extent that they relate to her claims against the Board, Havel, and unnamed SJCADC officers and employees.

I.      **Federal Claim Against Individual-Capacity SJCADC Employees**

Count I alleges that unnamed SJCADC employees were deliberately indifferent to Stevens' serious medical needs, in violation of the protections afforded to pretrial detainees such as Stevens under the Fourteenth Amendment. The Board and Havel contend that SJCADC officers were not on notice of Stevens' suicidal plans or ideation and that these officers did not either fail to take appropriate action or act in wanton disregard of his needs. Plaintiff responds that SJCADC personnel were aware of Stevens' mental health history and that the facility has a history of systemic failures in providing medical and mental health treatment to inmates.

A. Merits

"[C]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997). Such claims are analyzed pursuant to the "deliberate indifference" standard under the Fourteenth Amendment. *See id.* at 868-69; *see also Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994) (citations omitted); *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) ("[D]eliberate indifference [can] occur[] when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."); *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1998) ("Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled

to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment.").

The deliberate indifference standard features objective and subjective components. "Under the objective inquiry, the alleged deprivation [of care] must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834). To establish the subjective component, the plaintiff must show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; [at the time of the deprivation,] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837; *see also Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) ("To prevail on the subjective component, the prisoner must show that the defendants 'knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" (quotation omitted)).

Here, the Board and Havel challenge only the subjective component of Plaintiff's deliberate indifference claim, so the Court assumes for purposes of resolving this motion that the objective component has been established.[3] Still, these Defendants have shown that there is no evidence to satisfy the subjective prong as to the unnamed SJCADC employees, and Plaintiff has not shown any specific facts showing that a genuine dispute of material fact exists on this question. More specifically, Plaintiff has failed to produce evidence to show that unnamed SJCADC employees knew of facts showing that a substantial risk of serious harm to Stevens might exist or that those employees concluded from those facts that such a risk actually existed. Plaintiff concedes that Stevens told the SJCADC booking officer that he was not suicidal upon

---

[3] "Death is, 'without doubt, sufficiently serious to meet the objective component necessary to implicate the [Eighth and] Fourteenth Amendment[s].'" *Layton v. Bd. of Cnty. Comm'rs*, 512 F. App'x 861, 868 (10th Cir. 2013) (unpublished) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)) (alternations in original).

booking, that Stevens told several Correctional Officer Defendants that he was not at risk to himself, that SJCADC officers had not listened in on any of Stevens' phone calls where contrary statements may have been made, that none of Stevens' contacts reported that he was suicidal, and that SJCADC officers responded promptly upon the discovery of Stevens' attempted suicide. The Board and Havel also state, and Plaintiff does not dispute, that "none of the SJC[A]DC officers saw any signs of suicidal ideation" in Stevens on the morning of his suicide, and none of the evidence on record suggests that any SJCADC officer saw any such signs prior to that date. The picture is even further complicated by the fact that Plaintiff does not clearly identify the SJCADC employees who allegedly committed any wrongful acts.[4]

Plaintiff suggests that *unnamed CHC employees* may have disregarded a known risk of harm by failing to properly administer certain prescribed medications to Stevens. However, the evidence and allegations relating to this argument have no bearing on whether *unnamed SJCADC employees* disregarded such a risk and failed to take reasonable measures to address it. Plaintiff neither alleges nor provides evidence that SJCADC employees themselves prevented Stevens from receiving treatment or denied him access to medical personnel.

Plaintiff does submit a deposition transcript showing SJCADC Operations Lieutenant Jim Calhoun knew of at least one of Stevens' previous suicide attempts from the previous decade, which might arguably create a genuine question as to whether Calhoun drew an inference that a risk of harm existed or possessed facts from which that inference could be drawn. However, Calhoun is not named as a Defendant to Count I or any other claim, and Plaintiff does not provide any evidence that Calhoun learned of Stevens' prior suicides from the unnamed

---

[4] For similar reasons, the Court has already dismissed Count I as to the unnamed CHC employees for Plaintiff's failure to provide fair notice of the basis for her claims against them. Although the Board and Havel assert in a short footnote that this reasoning would apply equally to the unnamed SJCADC employees, "[t]he court will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004).

SJCADC Defendants, that Calhoun relayed his knowledge to these Defendants, or that Calhoun's knowledge and inferences could be imputed to these Defendants. *See duBois v. Payne Cnty. Bd. of Cnty. Comm'rs*, 543 F. App'x 841, 846-48 (10th Cir. 2013) (unpublished) (rejecting plaintiff's argument that defendants' knowledge of decedent's suicidal condition could be inferred from their fellow employees' knowledge of this condition).

Plaintiff also provides evidence that it was a SJCADC employee, known only as "Sgt. Alford," who made the initial decision to place Stevens under observation in the facility's medical unit upon booking. Yet as Plaintiff concedes, there is no evidence establishing why Stevens was placed under observation by Sgt. Alford, and the only documentation contemporaneous with that decision records Stevens' denials of suicidal ideation at the time of his arrest and booking. Moreover, even assuming that the unknown Sgt. Alford is one of the Defendants targeted by Count I,[5] his decision to place Stevens under medical observation would hardly seem to constitute a "fail[ure] to take reasonable measures to abate" a risk of suicide. *See Callahan*, 471 F.3d at 1159.

### B. Rule 56(d) Affidavit

Nonetheless, Plaintiff argues that summary judgment as to this claim is not appropriate because further discovery is necessary in order for her to respond to the Board and Havel's arguments. Federal Rule of Civil Procedure 56(d) provides that the Court may defer consideration of a summary judgment motion, allow time for additional discovery, or deny the motion completely "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). "A party seeking to defer a ruling on summary judgment" pursuant to this Rule "must 'file an affidavit

---

[5] Plaintiff has never sought to join Sgt. Alford to this action or otherwise amend her complaint to state a claim against him.

that explain[s] why facts precluding summary judgment cannot be presented.'" *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)). To satisfy this standard, the party must (1) identify the unavailable facts, (2) identify the steps already taken to acquire those facts, and (3) show how additional time will allow her to rebut the summary judgment movant's arguments. *See F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013) (quoting *Trask*, 446 F.3d at 1042); *see also Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).

Pursuant to Rule 56(d), Plaintiff's attorney Robert F. Gentile filed an affidavit asserting that "[n]ecessary discovery essential to further justify Plaintiffs' position against these Defendants remains outstanding. Specifically, the depositions of Mr. Havel and Ms. Jo Davis have not yet been taken." (**Doc. 54 Ex. 12**). Gentile then refers to a letter that former SJCADC social worker Davis wrote regarding "significant deficiencies with the medical health care being provided to the SJCADC inmates," specifying a host of alleged problems with the treatment of detainees by CHC staff. Gentile also argues that this letter shows that Havel was aware of the "grave concerns" that existed at SJCADC.

The Davis letter does not discuss any purported wrongdoing by SJCADC corrections officers, and Gentile does not explain how Davis's deposition would allow Plaintiff to rebut the arguments raised by the Board and Havel regarding Count I. Nor does Gentile explain how Havel's deposition would allow Plaintiff to better respond to the instant motion as it pertains to this claim. For that matter, Gentile does not identify any unavailable facts relating to Count I or the steps already taken to acquire those facts prior to the depositions of Davis and Havel. Gentile's simple assertion that this "outstanding discovery is essential for Plaintiff[] to prove that genuine issues of material fact exist" will not suffice for Rule 56(d) purposes. *See Libertarian*

10

*Party*, 506 F.3d at 1308 (noting that a party opposing summary judgment may not invoke Rule 56(d) "by simply stating that discovery is incomplete"). Finally, to the extent that Plaintiff's arguments in her response brief address any of these factors, such argumentation is "obviously insufficient" to comply with Rule 56(d)'s affidavit requirement. *See Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006) (citation omitted).

    C.  <u>Conclusion</u>

In short, the Board and Havel have shown that there is an absence of evidence to support a claim against the unnamed SJCADC employees in their individual capacities, and Plaintiff has failed to designate specific facts showing that a genuine issue of material fact exists as to this claim. Additionally, Plaintiff has not shown that relief under Rule 56(d) is proper. Accordingly, the unnamed SJCADC employees are entitled to judgment as a matter of law as to Plaintiff's claim of deliberate indifference against them in their individual capacities.

**II.**    **Federal Claims Against the Board**

    A.  <u>Deliberate Indifference of Official-Capacity SJCADC Employees</u>

Although Count I is only aimed at "Correctional Officer Defendants," including unnamed SJCADC employees, Plaintiff does not specify whether the claim is brought against these employees in their individual or official capacities. Since the caption of Plaintiff's complaint names these parties in both capacities, the Court will consider the viability of Count I against them in their official capacity.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against

the entity"—in this case the Board. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).

Municipal liability under § 1983 cannot be established under a theory of *respondeat superior*. *See Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). Instead, a plaintiff must establish the existence of a constitutional violation, a specific policy or custom, and a direct causal link between the two showing that the entity itself was a "moving force" behind the violation. *See Graham*, 473 U.S. at 166; *see also Dodds*, 614 F.3d at 1202 (citation omitted). The causal link may be established by showing that the policy or custom "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *See Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1496 (10th Cir. 1990).

As to the purported constitutional violation in this case, Defendants challenge only the subjective portion of Count I. However, the analysis here differs from the individual-capacity analysis because Plaintiff claims that the Board was put on notice of the potential for such violations via the letter sent by Davis. In her letter, Davis relates incidents where health care workers failed to timely verify inmates' prescription needs, improperly administered or withheld medication, and inadequately documented medical treatment. She notes that the problems were particularly affecting inmates with mental health issues, and she adds that the administration was pressuring medical staff to move these inmates out of medical housing despite their needs. This letter was addressed to Havel and certain CHC executives, among others, and it is dated April 3, 2012, less than a month before Stevens's death.

Last year, the Tenth Circuit considered a deliberate indifference claim brought by the estate of an inmate who died of kidney failure. *See Layton v. Bd. of Cnty. Comm'rs*, 512 F. App'x 861, 863-64 (10th Cir. 2013) (unpublished). Prior to the inmate's death, which his estate

alleged could have been prevented by proper care, the U.S. Department of Justice and several state agencies produced reports citing multiple instances where inmates had been poorly supervised or denied access to necessary medical care and prescription medication. *See id.* at 864-67. Reversing a trial court grant of summary judgment, the Tenth Circuit clarified that to satisfy the subjective component of her claim, "[the plaintiff] merely needed to present evidence that [the decedent] faced a substantial risk of serious harm of which the prison officials were, or should have been, aware." *Id.* at 870 (citation needed); *see also Farmer*, 511 U.S. at 842 ("[A] claimant need not show that a prison acted or failed to act believing that harm *actually* would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge* of a substantial risk of harm."); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("The official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur."). Knowledge of a substantial risk may be demonstrated through "inference from circumstantial evidence," *see Layton*, 512 F. App'x at 870 (quoting *Gonzales v. Martinez*, 403 F.3d 1179, 1183 (10th Cir. 2005)), and the court concluded that a triable issue of fact existed as to whether the DOJ and agency reports made the supervising county and its sheriff aware of "longstanding, systemic deficiencies in the medical care that the jail provided to detainees," *see id.* at 869-70.

Although *Layton* is an unpublished, nonbinding opinion, the Court finds its reasoning persuasive. Here, the parties provide conflicting evidence and arguments as to whether Stevens received necessary prescription medication and mental health services from staff employed by CHC, the SJCADC medical contractor. Plaintiff has also raised an issue of fact as to whether these purported deficiencies resulted from systemic problems at SJCADC, whether Havel became aware of them through Davis's letter to him, and whether Stevens' suicide was caused

by these alleged deficiencies. In short, Plaintiff has produced evidence suggesting that genuine issues of material fact remain as to the existence of a constitutional violation.

Moreover, the questions raised by Davis's letter to Havel and others could lead a fact finder to conclude that the alleged constitutional violation was the direct result of an unconstitutional policy or practice. "The deliberate indifference standard [in the municipal liability context] may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). A reasonable fact finder might conclude that Havel is "a final policymaker with regard to [SJCADC], such that his actions 'may fairly be said to be those of the [Board],'" *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) (quoting *Brown*, 520 U.S. at 404), that he was on notice of deficiencies at the facility, that he failed to address them, and that these failures constituted deliberate indifference. *See Layton*, 512 F. App'x 871-72 (citing *Tafoya*, 516 F.3d at 920). Finally, Plaintiff has produced evidence from which a reasonable fact finder could conclude that Stevens might have received appropriate mental health treatment if not for these alleged deficiencies and that these problems were therefore the "moving force" behind the alleged violation of Stevens' constitutional rights. *See Graham*, 473 U.S. at 166.

Plaintiff has "presented evidence of disputed material facts sufficient to create a genuine question as to whether [the Board] was deliberately indifferent to the conditions at [SJCADC]." *See Tafoya*, 516 F.3d 921. The Court therefore concludes that the unnamed SJCADC employees in their official capacity—which is to say, the Board, *see Graham*, 473 U.S. at 166—are not entitled to summary judgment as to Count I.

14

B.  Deliberate Indifference for Failure to Train and Failure to Supervise

In Count II, Plaintiff accuses the Board and Havel (in his official capacity[6]) of deliberate indifference for failure to train and supervise Correctional Officer Defendants. A failure to adequately train or supervise employees may subject a municipal entity to liability under § 1983 if this failure results from deliberate indifference. *See City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations omitted); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 773 (10th Cir. 2013) ("A municipality can be liable where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" (quoting *City of Canton*, 489 U.S. at 390)).

Here, the Board and Havel argue that Plaintiff cannot show that the training and supervision of Correctional Officer Defendants was inadequate, and they point to the existence of a mandatory Suicide Prevention and Intervention Course as evidence that inmate suicide was treated seriously at SJCADC. Quoting caselaw from a sister circuit, they assert that "[t]he existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent." *Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000) (citation omitted). However, by introducing evidence of purportedly longstanding deficiencies at the facility and the Board's knowledge of such through Davis's letter to Havel, Plaintiff has created a triable fact issue concerning whether the need for more or different training or supervision was "obvious, and the inadequacy . . . likely to result in the violation of constitutional rights" alleged in her complaint. *See Schneider*, 717 F.3d at 773

---

[6] Although the Board and Havel assert that Havel is entitled to qualified immunity, this defense cannot apply to claims raised against him in his official capacity. *See Brandon v. Holt*, 469 U.S. 464, 471-73 (1985).

(quoting *City of Canton*, 489 U.S. at 390). A rational jury could conclude that SJCADC officers were properly supervised, that the SJCADC training regimen sufficed, and that inadequate training did not lead to Stevens' death. Alternatively, a reasonable jury could conclude that systemic problems in mental health treatment existed at SJCADC and that the facility's failure to remedy these issues through additional training and appropriate supervision constituted deliberate indifference. Accordingly, the Board is not entitled to summary judgment with respect to Plaintiff's claims of deliberate indifference through failure to train or failure to supervise.

## III.    Federal Claims Against Havel

Count II also alleges that Havel, in his individual capacity, failed to properly train and supervise Correctional Officer Defendants and that these failures led to the violation of Stevens' constitutional rights and his death. The Board and Havel do not address these claims against Havel on the merits, instead arguing that Havel is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dodds*, 614 F.3d at 1191 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("[Qualified immunity] is an *immunity from suit* rather than a mere defense to liability . . . ."). "Once a defendant asserts qualified immunity, . . . '[t]he plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct . . . .'" *Dodds*, 614 F.3d at 1191 (quoting *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the

16

plaintiff maintains." *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).

The Board and Havel, relying on caselaw from outside the Tenth Circuit, assert that "there is no general right of prisoners or detainees to be correctly screened for suicidal tendencies or to be protected against committing suicide." *Soles v. Ingham Cnty.*, 316 F. Supp. 2d 536, 541 (W.D. Mich. 2004). Plaintiff, citing to more relevant authorities, retorts that "[i]t is clearly established in the Tenth Circuit that the duty to provide adequate medical care to inmates and even detainees under the Eighth and Fourteenth Amendments includes a duty to prevent suicide." *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1147 (D.N.M. 2012) (citing, *e.g.*, *Barrie*, 119 F.3d at 866).

Both sides miss the mark. "The operation of [the qualified immunity] standard . . . depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "It is not enough to look at generalized legal principles." *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1497-98 (10th Cir. 1992) (citing *Anderson*, 483 U.S. at 639-40), *overruled on other grounds by Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). "Instead, for any court to reach a determination that a violation of clearly established law has taken place[,] a 'more particularized' inquiry is required. The court must ask whether 'every reasonable official would have understood that *what he [did]* violate[d] that right.'" *Kerns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011) (quotation omitted).

As such, the question here is not whether a duty to "protect against" or "prevent" suicide existed, but "whether it was beyond debate" that the *specific conduct* allegedly committed by Havel was illegal at the time it occurred. *See id.* Plaintiff has not addressed this question. Rather than alleging that Havel committed any specific conduct, Plaintiff's complaint simply asserts that

his purported failure to supervise Correctional Officer Defendants "can be inferred from the obviousness of the facts." Plaintiff presents no allegations or evidence that Havel acted or failed to act in any specific manner, and she cites no authority to stand for the proposition that any supposed actions or failures to act constituted a violation of any constitutional right, let alone that this right was clearly established. Plaintiff, who bears the burden to establish that Havel is not entitled to qualified immunity, *see Dodds*, 614 F.3d at 1191, has therefore failed to meet this burden with respect to her failure-to-supervise deliberate indifference claim.

Nor does Plaintiff's failure-to-train deliberate indifference claim against Havel fare any better. Plaintiff has not cited any Supreme Court or Tenth Circuit caselaw, let alone any weight of authority from other circuits, for the proposition that Havel's specific conduct in failing to sufficiently train the unnamed SJCADC employees violated clearly established constitutional principles. *Cf. Zia Trust*, 597 F.3d at 1155 (quotation omitted). Although Plaintiff cites to *Olsen v. Layton Hills Mall* to assert that the Board, through Havel, acted with deliberate indifference, the plaintiff in that case "alleged facts showing that [the defendant] officers receive[d] *absolutely no training*" on the relevant mental health concerns. *See* 312 F.3d 1304, 1319 (10th Cir. 2002) (emphasis added). Here, by contrast, the undisputed evidence shows that Havel and the Board required SJCADC officers to undergo at least *some* training to prevent suicide in the facility, so *Olsen* is not directly "on point." *See Zia Trust*, 597 F.3d at 1155. Although Plaintiff's argument could go toward establishing that a genuine issue of material fact exists as to this claim, the Court can only reach that question "[i]f, and only if, the plaintiff meets th[e] two-part test" for refuting a qualified-immunity defense. *See Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013) (quotation omitted). Thus, even though the Court has concluded that the Board itself is not entitled to judgment as a matter of law with respect to this claim, Count II must be dismissed as

18

to Havel in his individual capacity since Plaintiff has not rebutted Havel's defense of qualified immunity.

Because Plaintiff cannot show that Havel violated a clearly established constitutional right, Havel is entitled to qualified immunity as to Count II. Further, though Plaintiff has filed a Rule 56(d) affidavit asking that the Court defer consideration of this motion, no amount of additional discovery as to this claim will matter since Havel is qualifiedly immune to suit, and Plaintiff has failed to cite any unavailable facts that would establish otherwise. *See Mitchell*, 472 U.S. at 526; *see also Pearson*, 555 U.S. at 231-32 (noting that the qualified immunity doctrine seeks to ensure that "insubstantial claims against government officials" be resolved "prior to discovery"). Accordingly, the Court concludes that the failure-to-supervise and failure-to-train deliberate indifference claims against Havel must be dismissed.

## IV.   State Law Claims

In addition to the federal claims against these Defendants, Plaintiff asserts that the Board and Havel acted in violation of state law. The Court considers these claims in turn.

### A.   Negligence

In Count III, Plaintiff brings a claim of negligence against the Board and Havel pursuant to the New Mexico Wrongful Death Act, N.M.S.A. 1978, §§ 41-2-1, *et seq.* The Board and Havel point out that Plaintiff did not cite any specific waivers to the grant of immunity to governmental entities and public employees found in the New Mexico Tort Claims Act ("NMTCA"), N.M.S.A. 1978, § 41-4-1, *et seq.* Plaintiff does not respond to this argument, although she does appear to contend that a waiver of immunity in N.M.S.A. 1978, § 41-4-12[7] is applicable.

---

[7] Plaintiff repeatedly cites to "NMSA 1978, section 41-4-2," but she quotes provisions making it plain that she intends to cite to § 41-4-12.

Governmental entities and their public employees acting within their scope of duty are generally immune from liability for torts. *See* N.M.S.A. 1978, § 41-4-4(A). However, this immunity is waived for "law enforcement officers . . . acting within the scope of their duties" with respect to liability for certain enumerated torts as well as the "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico." *Id.* § 41-4-12.

The Board and Havel concede that they and their employees are "jailers" to whom the waiver in § 41-4-12 applies. However, a claim of negligence does not trigger this waiver unless the negligence is alleged to have caused the defendant to have committed one of the enumerated torts, which is not the case here. *See Lessen v. City of Albuquerque*, 144 N.M. 314, 321-22 (Ct. App. 2008). Moreover, because a deliberate indifference claim requires a higher level of culpability than mere negligence, *see Farmer*, 511 U.S. at 835, Plaintiff cannot argue that any purported negligence was tied to the constitutional deprivations alleged in her federal claims, *see Lessen*, 144 N.M. at 322 (citations omitted). Accordingly, Count III must be dismissed as to the Board and Havel.

B. <u>Deprivation of Rights, Privileges or Immunities</u>

The heading to Count IV implies that Plaintiff is bringing a NMTCA claim against the unnamed SJCADC officers for deprivation of Stevens' constitutional protections against deliberately indifferent treatment. In fact, subsequent paragraphs clarify that Plaintiff is actually seeking to hold the Board and Havel liable under a theory of *respondeat superior* for the alleged constitutional deprivations committed by these employees. Regardless, the Board and Havel argue that no such liability can exist here because Plaintiff cannot establish that the unnamed SJCADC officers acted with deliberate indifference.

20

For a *respondeat superior* claim to lie under the NMTCA, the defendant targeted by the claim must have acted wrongfully through the conduct of its employees. *See Silva v. State*, 106 N.M. 472, 477 (1987). Here, the Court has already observed that the unnamed SJCADC employees are entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim of deliberate indifference against them. Moreover, Plaintiff presents no argument that the substantive due process protections under the New Mexico Constitution are any different for present purposes than those provided by the United States Constitution, *see Glover v. Gartman*, 899 F. Supp. 2d 1115, 1154 (D.N.M. 2012) (citations omitted), and at any rate New Mexico caselaw appears to substantially follow the federal analysis of deliberate indifference claims, *see id.* (citing *State v. Arrington*, 115 N.M. 559, 561 (Ct. App. 1993); *State v. Augustus*, 97 N.M. 100, 101 (Ct. App. 1981)). Accordingly, Plaintiff's *respondeat superior* claim against the Board and Havel under the NMTCA cannot survive, and those Defendants are entitled to summary judgment as to Count IV.

C.  Third Party Beneficiary Breach of Contract Claim

In Count V, Plaintiff asserts that Stevens was a third-party beneficiary of the contract between CHC and SJCADC (*i.e.*, the Board and Havel) and that these parties breached the contract by failing to ensure that Stevens received proper medical and mental health treatment. The Board and Havel moved for summary judgment, providing as an exhibit portions of a contract between the Board and CHC's predecessor corporation "entered into as of August 1, 2001." This contract includes a provision, headlined "**NO THIRD PARTY BENEFICIARIES**," that reads:

> The enforcement of the terms and conditions of this Agreement and all rights of action relating to such enforcement, shall be strictly reserved to the County and Contractor, and nothing contained in this Agreement shall give or allow any such claim or right of action by any other or third person on such Agreement. It is the

express intention of the County and the Contractor that sub-contractors and any other person other than the County or the Contractor receiving any benefits from this Agreement shall be deemed to be incidental beneficiaries only.

*See* (**Doc. 44 Ex. 13 at 2**).

A plaintiff may meet his burden of proving that he was a third-party beneficiary to a contract "by relying on the unambiguous language of the agreement itself" or "extrinsic evidence such as the circumstances surrounding the execution of the agreement." *Hansen v. Ford Motor Co.*, 120 N.M. 203, 205 (1995) (citation omitted). However, the contract language provided by the Board and Havel expressly and plainly precludes Plaintiff's claim that Stevens was an intended beneficiary of the contract between the Board and CHC. Thus, at the time they filed the summary judgment motion, the Board and Havel had met their initial burden to show that there was an absence of evidence to support Plaintiff's case. *See, e.g.*, *Celotex*, 477 U.S. at 323; *Bacchus Indus.,* 939 F.2d at 891. Thus, the burden shifted to Plaintiff to provide specific facts showing that a triable issue of fact still exists on this breach of contract claim. *See, e.g.*, *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256.

Plaintiff has failed to meet her burden. Along with her response, she has submitted portions of a contract between the Board and CHC that went into effect in 2009 and that would appear to supersede the 2001 contract. However, even the relevant language in that contract unambiguously provides that detainees are not the intended beneficiaries of the agreement:

The parties agree that they have not entered into this AGREEMENT for the benefit of any third person or persons, and it is their express intention that this AGREEMENT is for their respective benefits only and not for the benefits of others who might otherwise be deemed to constitute third-party beneficiaries thereof.

*See* (**Doc. 54 Ex. 11 at 5**). The Court is unable to understand how Plaintiff could conclude from this language that "the purpose and scope [of the contract] show the detention center inmates are the intended beneficiaries of the Agreement between [the Board] and CHC," let alone that "the

Agreement definitively indicates that Defendants [the Board] and CHC intended to provide a benefit to, among others, Mr. Stevens," when the contract itself expressly states the opposite. Despite bearing the burden to provide specific facts to rebut the Board and Havel's showing of no genuine dispute of material fact, *see, e.g.*, *Celotex*, 477 U.S. at 324, the most Plaintiff has mustered is a more recent contract that precludes a third-party beneficiary claim just as much as the earlier contract. Accordingly, the Board and Havel are entitled to judgment as a matter of law as to Count V, and the Court grants these Defendants summary judgment on this claim.

CONCLUSION

For the foregoing reasons, the Board and Havel's motion for summary judgment (Doc. 43) is hereby **GRANTED IN PART AND DENIED IN PART**. Summary judgment is denied with respect to all claims against the Board (and, by extension, official-capacity Correctional Officer Defendants employed by SJCADC) in Counts I and II. Summary judgment is granted in Defendants' favor with respect to all other claims against the Board, Havel, and individual-capacity Correctional Officer Defendants employed by SJCADC.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE